1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DON ROSE,                              ) Case No.: 1:08-cv-00606 AWI JLT
                                            )
12                    Plaintiff,            ) FINDINGS AND RECOMMENDATIONS
          v.                                ) GRANTING IN PART AND DENYING IN
13                                          ) PART PLAINTIFF'S MOTION FOR
                                            ) DEFAULT JUDGMENT
14   SAMUEL ABRAHAM, et al.,                )
                                            ) (Docs. 113-14)
15                    Defendants.           )
                                            )
16   _____)

17        Plaintiff Don Rose ("Plaintiff") seeks the entry of default judgment against defendants

18   Samuel Abraham; Steven Duce; Alicia Duce; Bella Robles Corporation, Inc.; Roger Fontaine; Lance

19   Slayton; and Landmark, Ltd. (collectively, "Defendants").  (Doc. 114). Pursuant to Local Rule 23-

20   (g), the Court determined this matter was suitable for decision without oral argument.  (Doc. 125).

21   For the following reasons, Court recommends the motion for default judgment be **GRANTED IN**

22   **PART AND DENIED IN PART**.

23   **I.   Procedural History**

24        Plaintiff initiated this matter by filing a complaint on May 1, 2008.  (Doc. 1).  Plaintiff

25   alleges violations of the Racketeering Influenced & Corrupt Organizations Act pursuant to 18 U.S.C.

26   § 1962, fraud, negligent misrepresentation, and a breach of contract claim. *Id.* at 1-8.  In addition,

27   Plaintiff raised claims of negligence and a breach of fiduciary duties by Bank of the Sierra, which

28   was dismissed as a defendant on June 25, 2008.  (Doc. 32).

                                            1

On March 11, 2009, the Court found Plaintiff was entitled to partial summary judgment against defendants Abraham and Steven Duce.  (Doc 56).  The Court determined Plaintiff established a claim for breach of contract by Abraham.  (*Id.* at 4).  In addition, the Court released the funds held in escrow to Plaintiff "as partial satisfaction of contract damages in any further judgment against Defendant Abraham or other Defendants as appropriate."  (*Id.* at 5).

On August 29, 2009, Plaintiff filed a First Amended Complaint to include claims against defendants Roger Fontaine, Alicia Duce, Lance Slayton, Landmark Ltd. (Doc. 69).  Plaintiff was unable to locate these defendants for service of process.  (Doc. 80).  Finding Plaintiff demonstrated "reasonable diligence in attempting service," the Court granted Plaintiff's request to serve defendants Alicia Duce, Lance Slayton, and Landmark Ltd. through publication on September 20, 2010.  (Doc. 81 at 2-3) (citing *Watts v. Crawford*, 10 Cal. 4th 743, 749 n.5 (1995)).  However, the Court found it was improper to serve Roger Fontaine by publication under the Hague Convention or the laws of Canada.  (*Id.* at 3).

After Plaintiff effected service through publication, the Clerk of Court entered default against Alicia Duce, Lance Slayton; and Landmark, Ltd. on January 26, 2011.  (Docs. 87-89).  Likewise, on March 11, 2011, the Clerk of Court entered default against defendant Steven Duce after his answer was stricken for failure to comply with the Court's order.  (Docs. 93-94).  In spite of proper service (Docs. 52, 96), defendants Bella Robles Corporation and Roger Fontaine failed to file answers in a timely manner.  Pursuant to Plaintiff's request, the Clerk of Court entered default against Bella Robles Corporation and Roger Fontaine on September 9, 2011 (Doc. 100).  Accordingly, each defendant remaining in this action is in default.

Plaintiff filed several applications for the entry of default judgment against Defendants on September 20, 2011.  (Docs. 103-108).  However, Plaintiff failed to file briefing for the Court's consideration in support of the applications for default judgment, or explain the damages requested in adequate detail such that the Court could determine he was entitled to the amount requested. Therefore, the Court ordered Plaintiff to file supplemental briefing. (Doc. 112).  In accordance with the Court's order, Plaintiff filed his motion for default judgment on November 3, 2011 (Docs. 113-14), with a memorandum and exhibits in support thereof.  (Docs. 115-24).

2

## II.   Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment.  Where a default has been entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment.  Fed. R. Civ. P. 55(a)-(b).  After the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.  *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  In addition, granting or denying a motion for default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1980 (9th Cir. 1980).  The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default judgment is disfavored.  *Id.* at 1472.

## III.   Plaintiffs' Factual Allegations

Plaintiff alleges defendant Lance Slayton "represented himself as a person authorized to speak on behalf of Defendant Landmark, Ltd.," and "Slayton represented he could bring Plaintiff into a deal with Defendant Abraham by which Abraham would use his knowledge and influence to acquire a proof of funds for use in making large investments."  (Doc. 69 at 3).  Plaintiff and Slayton–on behalf of Landmark–entered into an Investor Agreement with Abraham, as trustee of Sunrise Trust, "by which Plaintiff and the other persons agreed to pay to Defendant Abraham US$2,150,000 per month for 13 months inconsideration of Mr. Abraham setting up a credit facility of US$100 Million through Credit Suisse, a large, multinational banking conglomerate."  (*Id.*)

Under the terms of the Investor Agreement, Plaintiff agreed to contribute $1,500,000 of each month's payment.  (*Id.* at 3-4).  Further, Abraham, who informed Plaintiff he had "a long-standing business relationship with Credit Suisse" was to "facilitate the transfer of the credit facility by way of a wire transfer known as a SWIFT MT 760."  (*Id.* at 4).

After execution of the Investor Agreement, Plaintiff transferred $1,500,000 from his account at Bank of the Sierra to Comercia Bank in City of Birmingham, State of Michigan, which was to be held by Defendant Bella Robles Corporation and Defendant Steven Duce."  (Doc. 69 at 4).  According to Plaintiff, Abraham and Duce "represented . . . Steven Duce's responsibility was limited to holding Plaintiff's money in an escrow account in order that it would be paid to Defendant Abraham only after the $100 Million was transferred via the 'SWIFT MT 760.'"  (*Id.* at 5).  Plaintiff alleges the credit facility of "$100 Million was never transferred to Plaintiff," and "a SWIFT MT 760 was never submitted to Credit Suisse or any other banking or like institution."  (*Id.*)

Plaintiff alleges "Defendants Steven Duce and Bella Robles Corporation did not create an escrow account for the purposes of holding Plaintiff's money, instead taking the money."  (Doc. 69 at 5).  According to Plaintiff, several withdrawals were made from the account without his authorization.  "On or around January 30, 2008, Defendant Steven Duce transferred $200,000 of Plaintiff's $1,500,000 from the account to Defendant Slayton."  (*Id.* at 6).  Plaintiff asserts "no return on any investment had been earned at the time of this transfer, or any time thereafter."  (*Id.*)  In addition, Plaintiff asserts that defendant Alicia Duce "wrote checks and made other withdrawals or draws against the account containing Plaintiff's money, for her personal use and to Defendant Abraham, without authorization from Plaintiff" on several occasions between January 28, 2008 and June 30, 2008.  (*Id.*)  Further, Duce transferred $200,000 to Mr. Fontaine "at the direction of Defendant Abraham" on February 9, 2008.  (*Id.*)

On or about September 18, 2007, Abraham "was convicted by guilty plea to wire fraud and engaging in monetary transactions in criminal deprived property involving victims not party to this litigation."  (Doc. 69 at 6).  According to Plaintiff, "the criminal charges to which Defendant Abraham pleaded guilty involved his representations to person that, in exchange for a fee deposited in an escrow account that did not exist, he would provide a transfer of a large sum of money to the

4

1  victim, and that Defendant Abraham would provide a fake letter from a banking institution

2  confirming the funds were available for him to transfer to his victims."  (*Id.*)

3  **IV.   Application of *Eitel* Factors**

4        Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in

5  favor of granting Plaintiffs' motion for default judgment.

6        A.   Prejudice to Plaintiff

7        Plaintiff has no other alternative by which to recover damages suffered as a result of actions

8  by Defendants.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *J & J Sports Productions v. Rodriguez*,

9  2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010).  Therefore, the Court finds that

10 Plaintiff would be prejudiced if a default judgment is not granted.

11       B.   Merits of Plaintiff's claims and sufficiency of the complaint

12       Given the kinship of these factors, the Court will consider the merits of Plaintiff's substantive

13 claims and the sufficiency of the complaint together.  *See J & J Sports Productions v. Hernandez*,

14 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).  The Ninth Circuit has suggested

15 that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may

16 recover."  *Pepsico, Inc.*, 238 F.Supp.2d at 1175, citing *Kloepping v. Fireman's Fund*, 1996 U.S.

17 Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).

18            *Racketeer Influenced and Corrupt Organizations Act ("RICO")*

19       RICO allows a private citizen to recover damages for conduct of an enterprise through a

20 patter of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1960, *et seq*.  The

21 elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of

22 racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or

23 property."  *Living Designs, Inc. v. E.I. DuPont de Nemours * Co.*, 431 F.3d 353, 361 (9th Cir. 2005);

24 *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The RICO statute enumerates

25 specific acts which satisfy the "racketeering activity" element, such as "an act or threat involving

26 murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or

27 dealing in a controlled substance or listed chemical . . ."  18 U.S.C. § 1961(1).  In addition, to

28 establish a pattern, Plaintiff must "show that the racketeering predicates are related [to each other]

and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

Here, Plaintiff asserts "Defendants Abraham, Bella Robles Corporation, Steven Duce, Slayton, Landmark Ltd. and Alicia Duce did, through a pattern of racketeering activity, conduct and participate in interstate and/or foreign commerce in which they maintained control of an enterprise." (Doc. 69 at 7).  Plaintiff alleges the defendants engaged in activities identified as "racketeering activity" under § 1961(1), including wire fraud and monetary transactions in property derived from unlawful activity.  (*Id.*) (citing 18 U.S.C.  1343, 1957(a)).  Further, Plaintiff asserts the defendants have a pattern of this activity because they "have committed two or more acts that constitute predicate offenses within 10 years."  (*Id.*); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (a plaintiff must show two or more acts constituting a pattern).  According to Plaintiff, "[a] threat of continuity exists" because defendant Abrah engaged in such conduct after entering a guilty plea for similar activities, and "the remaining Defendants furthered the illegal conduct."  (*Id.* at 8).  Finally, Plaintiff has established "concrete proof of financial loss," as required to establish a RICO violation.  *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002). Therefore, Plaintiff has established the defendants engaged in activities prohibited by 18 U.S.C. § 1962 and Plaintiff has sufficiently stated a claim for a RICO violation by defendants Abraham, Bella Robles Corporation, Steven Duce, Alicia Duce, Slayton, and Landmark Ltd.[1]

*Breach of contract*

A breach of contract claim arises under California law, and Plaintiff must establish that there was a contract under which he performed or had an excuse for non-performance, and that Defendants breached the contract, which resulted in damages to Plaintiff.  *Wall Street Network, Ltd. v. New York Times, Co.*, 164 Cal. App. 4th 171, 178, 80 Cal. Rptr. 3d 6 (2008) ("The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom.").

---

[1]  As Plaintiff notes in his First Amended Complaint, the claims for fraud and negligent misrepresentation are incorporated within the RICO violation.  Because the Court finds Plaintiff has sufficiently plead the RICO claim, the Court will not analyze the sufficiency of the individual fraud and negligent misrepresentation claims.

1    As addressed above, the Court determined previously Plaintiff stated a breach of contract

2    claim against Abraham.  (Doc. 56 at 4).  Further, Plaintiff raised a breach of contract claim against

3    Slayton and Landmark Ltd., who were parties to the Investor Agreement under which Plaintiff made

4    an initial payment of $1,500,000.  In spite of Plaintiff's payment, Slayton and Landmark Ltd. failed

5    to perform under the Investor Agreement, which resulted in damages to Plaintiff who had transferred

6    the funds.  Therefore, Plaintiff has sufficiently stated a breach of contract claims against Abraham,

7    Slayton, and Landmark Ltd.

8                            *Unjust Enrichment*

9    "[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable,

10   binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. GE Capital Corp.*,

11   96 F.3d 1151, 1167 (9th Cir. 1996).  The elements of unjust enrichment are "receipt of a benefit and

12   unjust retention of the benefit at the expense of another."  *Lectrodryer v. SeouBank*, 77 Cal. App. 4th

13   723, 726 (2000); *Peterson v. Cellco Patrnership*, 164 Cal. App. 4th 1583, 1593 (2008) (same), ; *but*

14   *see Levine v. Blue Shield of California*, 189 Cal. App. 4 th 1117, 1138 (2010) ("there is no cause of

15   action in California for unjust enrichment.  Unjust enrichment is synonymous with restitution").  To

16   the extent there is a "cause of action" for unjust enrichment, Plaintiff has shown he is entitled to

17   restitution of the funds, because it would be unjust to allow the defendants to reap the benefit of the

18   funds obtained through fraud.

19           C.   Sum of money at stake

20           In considering this factor, the Court "must consider the amount of money at stake in relation

21   to the seriousness of Defendant's conduct."  *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, the award

22   requested is $4,365,250.84, excluding attorneys fees and costs.  (Doc. 114 at 10).  According to

23   Plaintiff, after recovering the monies in the account as ordered by Court, he has yet to recover

24   $1,091,312.71 from the $1.5 million payment.  (Doc. 114 at 7-8).  Plaintiff seeks treble damages as

25   permitted for violations of RICO pursuant to 18 U.S.C. 1964(c).  Thus, though the amount of money

26   at stake is significant, the Court finds the factor does not weigh against the entry of default judgment

27   because the sum is in a proportion to Defendant's conduct as contemplated by the law.

28   ///

7

1       D.  Possibility of dispute concerning material facts

2       The Court also considers the possibility of dispute as to any material facts in the case.  Here,

3  however, there is little possibility of dispute concerning material facts because (1) based on the entry

4  of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendants have

5  not made any effort to challenge the Complaint or otherwise appear in this case.

6       E.  Whether default was due to excusable neglect

7       Generally, the Court will consider whether Defendants' failure to answer is due to excusable

8  neglect.  *See Eitel*, 782 F.2d at 1472.  Here, Plaintiff effected service on the Defendants via methods

9  permitted by the law.  Therefore, it is unlikely that Defendants' failure to answer, and the resulting

10  defaults entered by the Clerk of Court, were the result of excusable neglect.  *See Shanghai*

11  *Automation Instrument Co., Ltd. v. Kuei,* 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

12       F.  Policy disfavoring judgment

13       As noted above, default judgments are disfavored because "[c]ases should be decided on their

14  merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, Defendants' failure to

15  appear and defend makes a decision on the merits impractical.  Consequently, the policy underlying

16  the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against entry of

17  default judgment.

18  **IV.  Damages**

19       Plaintiff seeks compensatory damages, "treble damages" pursuant to RICO, and punitive

20  damages for the actions by Defendants.  Under RICO, a person injured by a racketeering activity

21  (such as wire fraud) in violation of 18 U.S.C. § 1962 "shall recover threefold the damages he

22  sustains and the costs of the suit, including a reasonable attorney's fees."  18 U.S.C. § 1964(c).

23  Accordingly, Plaintiff may recover three times the amount of his actual damages under RICO, but

24  may not receive compensatory damages in addition for the breach of contract violation.  *See*

25  *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 123 (1977)

26  (damages "should, insofar as possible, place [a] plaintiff in the same position he would have been

27  had the contract been performed, but he should not be awarded more than the benefit which he

28  would have received had the promissor performed").  Acknowledging this, Plaintiff seeks "treble

1   damages of $3,273,938.13 [which] includes $1,091,312.71 in compensatory damages." (Doc. 114 at

2   10).  Therefore, Plaintiff's request for treble damages under § 1964(c) in the amount of

3   $3,273,938.13 is recommended to be **GRANTED**.

4     As noted, according to Plaintiff, the amount of $1,091.312.71 represents the balance of the

5   $1.5 million transfer he made to the account.  However, Plaintiff seeks compensatory damages in the

6   amount of $200,000 from defendant Roger Fontaine for unjust enrichment.  Plaintiff provides no

7   explanation as to why he is entitled to recover $200,000 *in addition* to $1,091.312.71.  Therefore,

8   Plaintiff's request for damages in the amount of $200,000 from defendant Fontaine is recommended

9   to be **DENIED**.

10     In addition to the treble damages, Plaintiff seeks punitive damages in the amount of

11   $1,091.312.71 because "the acts of Defendants are not just an isolated incident of misconduct and

12   included multiple instances of intentional deceit." (Doc. 114 at 9).  The Supreme Court observed

13   "the most important indicium of the reasonableness of a punitive damages award is the degree of

14   reprehensibility of the defendant's conduct."  *State Farm Mut. Auto Ins. Co v. Campbell*, 538 U.S.

15   408, 419 (2003).  The Supreme Court noted,

16     We have instructed courts to determine the reprehensibility of a defendant by considering
  whether: the harm caused was physical as opposed to economic; the tortious conduct
17     evinced an indifference to or a reckless disregard of the health or safety of others; the
  target of the conduct had financial vulnerability;  the conduct involved repeated actions
18     or was an isolated incident; and the harm was the result of intentional malice, trickery,
  or deceit, or mere accident.

19

20   *Id.*  Though Plaintiff noted these factors in support of his request for punitive damages, Plaintiff

21   addressed only the final factors– that the conduct involved was not an isolated incident and the harm

22   was the result of intentional deceit. (Doc. 114 at 8-9).  Plaintiff fails to address that the harm caused

23   was not physical or whether the conduct demonstrated a reckless disregard to the health or safety of

24   others.  Further, Plaintiff does not address the vulnerability of his financial status, if any, as a result

25   of the defendants' actions.  These factors weigh against the entry of punitive damages.   Moreover,

26   the treble damages under RICO are both remedial and punitive in nature, and Plaintiff has not shown

27   why he is entitled to further punitive damages.  Consequently, Plaintiff's request for punitive

28   damages in the amount of $1,091.312.71 is recommended to be **DENIED**.

**V.  Attorney's Fees and Costs**

Pursuant to 18 U.S.C. § 1964(c), "a person injured . . . shall recover . . the cost of the suit, including a reasonable attorney's fee."  Here, Plaintiff requests costs in the amount of $5,776.82 and attorneys fees in the amount of $40,772.50 in conjunction with this action.  (Doc. 114 at 9-10).  The Local Rules provide, in relevant part,

> All motions for awards of attorneys' fees pursuant to statute shall, at a minimum, include an affidavit showing: (1) that the moving party was a prevailing party, in whole or in part, in the subject action...; (2) that the moving party is eligible to receive an award of attorneys' fees, and the basis of such eligibility; (3) the amount of attorneys' fees sought; (4) the information pertaining to each of the criteria [for awards] . . . ; and (5) such other matters as are required under the statute under which the fee award is claimed.

LR 293(b).  Here, Plaintiff is a prevailing party, and is eligible to receive an award of fees.  In addition, Plaintiff's counsel, Mr. Herr, filed a declaration demonstrating the costs and fees incurred in this action, and itemized invoices reflecting the time expended on the matter.  Accordingly, the Court finds Plaintiff's request to be adequately supported, and Plaintiff's request for attorney's fees and costs under 18 U.S.C. § 1964(c) is recommended to be **GRANTED**.

**VI.  Findings and Recommendation**

Application of the *Eitel* factors weighs in favor of default judgment.  Accordingly, the Court is acting within its discretion to grant default judgment.  *See Aldabe*, 616 F.2d at 1092.  Plaintiff has demonstrated he is entitled to treble damages for the RICO violations alleged, and for attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).  However, Plaintiff has not demonstrated that he is entitled to compensatory damages from defendant Richard Fontaine, or punitive damages from Defendants.

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for the entry of default judgment against Defendants be **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiff's request for damages be **GRANTED** in the amount of $3,273,938.13;

2.      Plaintiff's request for compensatory damages from defendant Richard Fontaine in the amount of $200,000 be **DENIED**;

3.      Plaintiff's request for punitive damages be **DENIED**; and

1        4.      Plaintiff's request for attorneys fees and costs be **GRANTED** in the amount of

2            $46,549.32.

3        These Findings and Recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the

5    Local Rules of Practice for the United States District Court, Eastern District of California.  Within

6    fourteen days after being served with these Findings and Recommendations, any party  may file

7    written objections with the court.  Such a document should be captioned "Objections to Magistrate

8    Judge's Findings and Recommendations."  The parties are advised that failure to file objections

9    within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*,

10   951 F.2d 1153 (9th Cir. 1991).

11

12   IT IS SO ORDERED.

13   Dated:   **December 22, 2011**                         **/s/ Jennifer L. Thurston**

14                                             UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28